UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
PATRICK COLLINS, INC.,

                         Plaintiff,

                  -against-                   **MEMORANDUM OF**
                                                **DECISION AND ORDER**
                                                12-cv-1154 (ADS)(GRB)

JOHN DOE 1,

                        Defendant.
----------------------------------------------------------X
**APPEARANCES:**

**Kotzker Law Group**
*Attorneys for the Plaintiff*
9609 S University Blvd #632134
Highlands Ranch, CO 80163
      By:    Jason Aaron Kotzker, Esq., Of Counsel

**Meyer, Suozzi, English & Klein PC**
*Attorneys for the Defendant*
1350 Broadway
Suite 501
New York, NY 10018
      By:    Michael A. Scotto, Esq.
                 Robert C. Angelillo, Esq., Of Counsel

**SPATT, District Judge.**

      The Plaintiff, Patrick Collins, Inc. ("Collins") commenced this action against John Does 1 through 9, pursuant to 17 U.S.C. § 106 and § 501, alleging direct and indirect copyright infringement of the Plaintiff's film "Gangbanged." Presently before the Court are objections to a Report and Recommendation of United States Magistrate Judge Gary R. Brown dated May 1, 2012, addressing an application by the Plaintiff in the above-captioned litigation for immediate discovery, pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 45 for a subpoena directed at specific non-party Internet Service Providers ("ISPs") to obtain identifying information about subscribers to the named Internet Protocol ("IP") addresses in order to identify

the anonymous John Doe Defendants. For the reasons set forth below, this Court adopts the Report and Recommendation in its entirety.

## I. BACKGROUND

### A. The BitTorrent Protocol

Prior to delving into the specific facts and circumstances surrounding the instant case, a brief explanation of the BitTorrent protocol and other technical terms may provide a useful foundation for the relevant disputes.

The Court's explanation of the BitTorrent protocol is primarily drawn from Judge Brown's explanation as well as that in Next Phase Distribution, Inc. v. John Does 1-27, No. 12-CV-3755, 2012 WL 3117182, at *1 (S.D.N.Y. Jul. 31, 2012) and DigiProtect USA Corp. v. Does, No. 10-CV-8760, 2011 WL 4444666, at *3 (S.D.N.Y. Sep. 26, 2011). BitTorrent is a peer-to-peer protocol that allows users to transfer large files on the Internet. First, the protocol breaks a single large file into a series of smaller distributable pieces. Then, an initial file-provider (the "Initial Seeder") intentionally elects to distribute the pieces to third parties. Other users ("Peers") on the network download a small "torrent" file that contains directions on where to find the seeder as well as an index of the pieces. The torrent file is loaded into BitTorrent software, and the software follows the directions in the torrent file to connect to the Seeder. When Peers connect to the Seeder, they download random pieces of the file being seeded. When a piece of the file has been downloaded, the Peer automatically begins sharing that piece with other Peers. Once a Peer downloads all of the pieces of the file, BitTorrent reassembles the pieces so that the Peer can view the entire file. The Seeders and Peers that share the same file, and are downloading and uploading that file to and from each other, are collectively called a "swarm." If a Peer with the completed file (obtained either through the same swarm, a different

swarm, or any other method) chooses to share that file with an already active swarm, that Peer becomes a Seeder.  BitTorrent also uses a "tracker" that tracks the pieces of the files as those pieces are shared among various computers.  This tracking feature allows an entity such as the Plaintiff to identify the IP addresses from which the films were downloaded, the subscribers to which have become the Defendants in the instant case.

An IP address is a "numeric label[] specific to a computer network that serve[s] to identify and locate that network on the Internet, but not to further identify the defendant.  In fact, a single IP address may host one or more devices operated or owned by multiple users (for example, a computer or handheld tablet), each communicating on the same network, such as with a wireless router or a business intranet." Media Prods., Inc. v. John Does 1-26, No. 12-CV-31719, 2012 WL 3866492, at *1 (S.D.N.Y. Sep. 4, 2012).

**B. The Present Action**

The Plaintiff claims to be the owner of a copyright registered for the pornographic film "Gangbanged."  The Defendants are internet users who allegedly each downloaded some or all of the Plaintiff's work using the BitTorrent Peer-to-Peer sharing protocol between November 17, 2011 and January 26, 2012.  On March 8, 2012, the Plaintiff commenced the present suit, alleging direct and indirect copyright infringement against each of the anonymous John Doe Defendants.  In its complaint, the Plaintiff identified each of the Defendants only by their IP addresses.

Over the past year, the Plaintiff has filed a number of similar lawsuits, in this district and others, involving dozens, if not hundreds, of defendants. In re BitTorrent Adult Film Copyright Infringement Cases, No. 12-CV-1154, 2012 WL 1570765, at *1 n.1 (E.D.N.Y. May 1, 2012) (collecting cases).  On March 12, 2012, the Plaintiff moved for leave to serve third party

3

subpoenas to the Defendants' alleged ISPs to obtain the name, address, phone number, and email address belonging to the accounts associated with the IP addresses contained in the complaint.

On May 1, 2012, Judge Brown issued an Order & Report and Recommendation regarding the instant matter and three related matters pending before other courts in this district. Judge Brown granted the Plaintiff's motion in part and allowed the Plaintiff to serve subpoenas pursuant to Fed. R. Civ. P. 45 on the ISPs to obtain the name, address, and Media Access Control address for only the Defendant John Doe 1 in each case. The Plaintiff was explicitly forbidden from seeking the telephone numbers and email addresses of these individuals. Furthermore, Judge Brown instructed the ISPs to produce the information directly to the Court, not to the Plaintiff, and directed that the submission be made *ex parte* and under seal.

Judge Brown also made the following recommendations relevant to the instant case: (1) that the complaints as to all the Defendants other than John Doe 1 be dismissed without prejudice; and (2) that Plaintiff and its counsel be directed that any future action of a similar nature in this district be filed as separate actions against each John Doe defendant.

On, May 10, 2012, the Plaintiff voluntarily dismissed the Defendants John Does 2 through 9. On May 16, 2012, the Plaintiff filed objections to Judge Brown's Report and Recommendation on the following grounds: (1) that the Plaintiff did not and will not engage in improper litigation tactics; (2) an IP address is likely to identify the actual infringer; and (3) joinder is appropriate in this action as well as similar future actions.

After reviewing the Plaintiff's objections, this Court adopts the Report and Recommendation in its entirety.

## II. DISCUSSION

### A. Legal Standard

A court is required to make a de novo determination as to those portions of the report and recommendation as to which objections were made. 28 U.S.C. § 636(b)(1)(C); Grassia v. Scully, 892 F.2d 16, 19 (2d Cir. 1989). The phrase " de novo determination" in Section 636(b)(1)—as opposed to "de novo hearing"—was selected by Congress "to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." United States v. Raddatz, 447 U.S. 667, 676, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980). Section 636 does not require a court "to rehear the contested testimony in order to carry out the statutory command to make the required 'determination.'" Id. at 674, 100 S. Ct. 2406. Rather, in making such a determination, a court may in its discretion review the record and hear oral argument on the matter. See Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters, 894 F.2d 36, 40 n. 3 (2d Cir. 1990). Furthermore, a court may in its sound discretion afford a degree of deference to the magistrate judge's report and recommendation. See Raddatz, 447 U.S. at 676, 100 S. Ct. 2406, 65 L. Ed. 2d 424.

In a case where a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (quoting Barratt v. Joie, No. 96-CV-324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002)). "Furthermore, even in a *de novo* review of a party's specific objections, the Court ordinarily will not consider arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance." Fairfield Fin. Mortg. Group, Inc. v. Luca, No. 06-CV-5962, 2011 WL 3625589, at *2 (E.D.N.Y. Aug. 16, 2011) (internal quotation marks omitted).

**B. Improper Litigation Tactics**

The Plaintiff first objects to Judge Brown's statement that "counsel for K-Beech has already engaged in improper litigation tactics in this matter, and [I] find it highly probable that Patrick Collins Inc. and Malibu will likely engage in similar tactics if permitted to proceed with these mass litigations." In re BitTorrent, 2012 WL 1570765, at *10. Further, Judge Brown concluded that "[t]he most persuasive argument against permitting plaintiffs to proceed with early discovery arises from the clear indicia, both in this case and in related matters, that plaintiffs have employed abusive litigations tactics to extract settlements from John Doe defendants." Id. at *9.

The Court adopts Judge Brown's factual findings, and finds his reasoning to be persuasive. Judge Brown's concerns seem particularly perceptive in light of the fact that, despite his explicit instruction that the subpoenaed information be sent directly to the Court, *ex parte* and under seal, the Plaintiff subsequently served subpoenas that instead requested that the identifying information be sent to the Plaintiff's counsel. The Court also agrees with Judge Brown's conclusion that "[o]ur federal court system provides litigants with some of the finest tools available to assist in resolving disputes; the courts should not, however, permit those tools to be used as a bludgeon." Id. at *10.

Other courts, both in this Circuit and around the country, have come to the same conclusion as Judge Brown when faced with similar circumstances. See Media Prods., Inc. v. John Does 1-26, No. 12-CV-31719, 2012 WL 3866492, at *2 (S.D.N.Y. Sep. 4, 2012) ("the federal courts are not flexible enough to be shaped into 'cogs in a plaintiff's copyright-enforcement business model. The Court will not idly watch what is essentially an extortion scheme, for a case that [Plaintiffs have] no intention of bringing to trial.'") (quoting Patrick

Collins, Inc. v. John Does 1 through 37, No. 12-CV-1259, 2012 WL 2872832, at *3 (E.D. Cal. July 11, 2012)); Digital Sins, Inc. v. John Does 1-245, No. 11-CV-8170, 2012 WL 1744838, at *3 (S.D.N.Y. May 15 2012) ("In these BitTorrent cases, where numerous courts have already chronicled abusive litigation practices…"); Patrick Collins, Inc. v. Does 1-6, No. 12-CV-2964, 2012 WL 2001957, at *1 (S.D.N.Y. Jun. 1, 2012) ("This Court shares the growing concern about unscrupulous tactics used by certain plaintiffs, particularly in the adult films industry, to shake down the owners of specific IP addresses from which copyrighted adult films were allegedly downloaded.") (citations omitted); SBO Pictures, Inc. v. Does 1-20, No. 12-CV-3925, 2012 WL 2034631, at *1 (S.D.N.Y. Jun. 5, 2012) ("Finally, early discovery has been used repeatedly in cases such as this one to harass and demand of defendants quick settlement payments, regardless of their liability."); Digital Sin, Inc. v. Does 1-176, 279 F.R.D. 239, 242 (S.D.N.Y. 2012) ("This course of conduct indicates that the plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them.  The plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does.") (citations omitted); Media Products, 2012 WL 3866492, at *1 ("The relatively small group of lawyers who police copyright infringement on BitTorrent have customized the concept of extracting quick settlements without any intention of taking the case to trial.").

    Accordingly, the Court affirms Judge Brown's finding that the Plaintiff may use improper litigation tactics if permitted to engage in mass litigation or if provided with the Defendants' email addresses and phone numbers.

**C. As to the Use of an IP Address to Identify Infringers**

The Plaintiff also objects to Judge Brown's finding that an IP address alone is insufficient to establish "a reasonable likelihood [that] it will lead to the identity of defendants who could be sued." In re BitTorrent, 2012 WL 1570765, at *7. Judge Brown noted that an IP address only points to the internet account in question, and "[a]s a result, a single IP address usually supports multiple computer devices—which unlike traditional telephones can be operated simultaneously by different individuals." Id. at *3 (citing U.S. v. Latham, No. 06-CR-379, 2007 WL 4563459, at *4 (D. Nev. Dec. 18, 2007)). Due to the prevalence of wireless routers, the actual device that performed the allegedly infringing activity could have been owned by a relative or guest of the account owner, or even an interloper without the knowledge of the owner.

The Plaintiff objects to this conclusion on three grounds. First, the Plaintiff contends that Judge Brown's conclusion is inconsistent with the decision in Arista Records LLC v. Does 1-16, No. 08-CV-765, 2009 WL 414060 (N.D.N.Y. Feb. 18, 2009) aff'd 604 F.3d 110 (2d Cir. 2010). However, Judge Brown clearly distinguished the instant case from the facts in Arista Records, and the Court sees no benefit in reviewing his reasoning.

Second, the Plaintiff argues that wireless routers are much more likely to be secured today than even a few short years ago, making it much more likely that the infringing activity was performed by the account owner rather than someone else. The Court notes that, even if this is true, a secured network does not reduce the likelihood, noted by Judge Brown, that the infringing activity was conducted by a guest, family member, or neighbor who shares the account owner's internet connection.

Furthermore, a "secured" wireless network by no means ensures that the infringing activity was not performed by an interloper making unauthorized use of the account holder's

8

network.  Many modern wireless routers include a feature called WiFi Protected Setup ("WPS"), which is often turned on by default, and is intended to allow users to more easily and securely add devices to their network.  However, the United States Computer Emergency Readiness Team, a division of the Department of Homeland Security, warns that this feature has a design flaw that renders any network that uses it vulnerable to attack.  U.S. Computer Emergency Readiness Team, Vulnerability Note VU #723755: WiFi Protected Setup (WPS) PIN Brute Force Vulnerability (Dec. 27, 2011) available at http://www.kb.cert.org/vuls/id/723755.

      The Court is hesitant to cite directly to information designed to compromise a computer network, but a simple internet search reveals that detailed instructions are widely available that would allow anyone with only a moderate degree of computer knowledge to "hack" any wireless network that uses this feature, using almost any modern laptop.  Furthermore, at least one website offers a $99 kit that gives the same capability to any user with even the most basic knowledge of computers.  Many routers also use a security method known as Wired Equivalent Privacy ("WEP"), which the FBI warns has its own share of exploitable vulnerabilities.   Federal Bureau of Investigation, Got a Wireless Network?  It's Time to Shore Up Security (May 4, 2007) available at http://www.fbi.gov/news/stories/2007/may/wireless_050407.

      If the Court were to hold internet account holders responsible for any interlopers and guests who might infringe on the Plaintiff's work, the Court would essentially be imposing a duty that every home internet user vigilantly guard their wireless network.  The Court declines to impose such a duty.  See AF Holdings, LLC v. Doe, No. 12-CV-2049, 2012 WL 3835102, at *3 (N.D. Cal. Sep. 5, 2012) ("AF Holdings has not articulated any basis for imposing on Hatfield a legal duty to prevent the infringement of AF Holdings' copyrighted works [by securing his wireless network], and the court is aware of none.").

9

Lastly, the Plaintiff insists that if this Court adopts Judge Brown's finding, federal law enforcement will be unable to prosecute cyber-crimes, particularly those that involve the sexual exploitation of minors. As Judge Brown notes, "[i]t is difficult to accord the plaintiff, which features "Teen" pornography on its website, the moral high-ground in this regard." In re BitTorrent, 2012 WL 1570765, at *5 n.7. In the Court's view, its ruling in the instant case will not negatively impact law enforcement. The legal questions encountered while prosecuting cyber-criminals involve different standards and factors than the ones at issue. The comparison between the two is entirely inapposite.

Many Courts have shared Judge Brown's skepticism of the use of IP addresses to identify file sharing defendants in cases involving pornographic films. Patrick Collins, Inc. v. Does 1-4, No. 12-CV-2962, 2012 WL 2130557, at *1 (S.D.N.Y. Jun. 12, 2012) ("There is a real risk that defendants might be falsely identified and forced to defend themselves against unwarranted allegations.") (citing Digital Sin, 279 F.R.D. at 242 ("The Court is concerned about the possibility that many of the names and addresses produced in response to Plaintiff's discovery request will not in fact be those of the individuals who downloaded 'My Little Panties # 2.' The risk is not purely speculative; Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material."); Digital Sin, Inc. v. John Does 1–179, No. 11-CV-8172, 2012 U.S. Dist. LEXIS 78292, at *1 (S.D.N.Y. Feb. 1, 2012) ("[S]uch discovery creates a cognizable risk that the names produced could include individuals who did not in fact download the copyrighted material.")); Patrick Collins, 2012 WL 2001957, at *1 ("Indeed, the true infringer could just as easily be a third party who had access to the internet connection, such as a son or daughter, houseguest, neighbor, or customer of a business offering internet connection."); Next Phase Distribution, 2012 WL

10

3117182, at *5 ("Second, the Court recognizes that it is conceivable that several John Does identified in this case did not actually download the Motion Picture.") (citations omitted); Media Products, 2012 WL 3866492, at *1 ("Particularly troubling for courts is the high probability of misidentified Doe defendants (who may be the bill-payer for the IP address but not the actual infringer) settling a case for fear of the disclosure of the allegations against them or of the high costs of litigation.") (citations omitted).

Ultimately, this Court agrees with the above-cited Courts, and adopts Judge Brown's finding that the Plaintiff failed to establish a reasonable likelihood that the discovery requested would lead to the identity of the Defendants who could be sued.

**D. Joinder**

The Plaintiff's final objection is to Judge Brown's recommendation that the Court instruct the Plaintiff that "any future actions of a similar nature in this district be filed as separate actions as against each John Doe defendant, so as to avoid unfair outcomes, improper joinder and waste of judicial resources, and to ensure the proper payment of filing fees." In re BitTorrent, 2012 WL 1570765, at *14. The Plaintiff insists that multiple joinder is appropriate in this case and in similar cases it will file in the future.

**1. Relevant Law**

Under Rule 20(a) of the Federal Rules of Civil Procedure ("Rule 20(a)"), "[a]ll persons may join in one action as plaintiff if they assert any right to relief . . . arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action." Rule 20(a) should be liberally interpreted to "enable the court to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding." A.I.A. Holdings, S.A. v.

Lehman Brothers, Inc., No. 97–CV–4978, 1998 WL 159059, at *5 (S.D.N.Y. April 1, 1998) (internal quotation marks and citation omitted).

The Court has broad discretion to sever claims under Rules 20(b), 21, and 42 (b). See, e.g., Amato v. City of Saratoga Springs, 170 F.3d 311, 316 (2d Cir. 1999); New York v. Hendrickson Bros., Inc., 840 F.2d 1065 (2d Cir. 1988); Corporan v. City of Binghamton, No. 05-CV-1340, 2006 WL 2970495, at *2 n. 2 (N.D.N.Y. Oct. 16, 2006); Jeanty v. Cnty of Orange, 379 F. Supp. 2d 533, 549 (S.D.N.Y. 2005). The factors for the Court to consider are: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims. "Severance requires the presence of only one of these conditions." Cestone v. Gen. Cigar Holdings, Inc., No. 00-CV-3686, 2002 WL 424654, at *2 (S.D.N.Y. Mar. 18, 2002) (quoting Lewis v. Triborough Bridge and Tunnel Auth., No. 97-CV-0607, 2000 WL 423517, at *2 (S.D.N.Y. Apr. 19, 2000)); see also Corporan, 2006 WL 2970495, at *3.

**2. As to Joinder in the Instant Case**

As an initial matter, the Court notes that, subsequent to Judge Brown's ruling but prior to its filing of objections, the Plaintiff voluntarily dismissed all of the Defendants besides John Doe 1. As such, as the case presently stands the issue of joiner is moot. However, the Plaintiff spent a significant portion of its objections discussing this issue, and has informed the Court that "Plaintiff does intend to proceed against a number of defendants and will do so." (Pl. Objections 2). Furthermore, there is a substantial volume of similar cases pending in this Circuit, many filed

by the same Plaintiff as in the instant case. As such, the Court will briefly address the Plaintiff's objections.

In this regard, the Plaintiff takes issue with Judge Brown's rejection of its "swarm joinder" theory. The "swarm joinder" theory posits that "every user who participates in the 'swarm' is acting in concert to violate plaintiffs' copyrights." In re BitTorrent, 2012 WL 1570765, at *11.

The Plaintiff correctly notes that a number of Courts have adopted the "swarm joinder" theory. In fact, the validity of the "swarm joinder" theory is the subject of a wide-ranging split in this Circuit and others. SBO Pictures, Inc. v. Does 1-20, No. 12-CV-3925, 2012 WL 2304253, at *2 (S.D.N.Y. Jun. 18, 2012) ("Dozens of district courts have reached conflicting conclusions") (comparing On the Cheap, LLC v. Does 1–5011, No. 10-CV-4472, 2011 WL 4018258, at *1 (N.D. Cal. Sept. 6, 2011) (collecting cases and rejecting joinder) and Digital Sin, 2012 WL 1744838, at *3 (rejecting joinder), with Digital Sin, 279 F.R.D. at 244 (accepting joinder) and Digital Sin, Inc v. Does 1–27, No. 12-CV-3873, 2012 WL 2036035, at *2 (S.D.N.Y. June 6, 2012) (accepting joinder but "remain[ing] open to reconsidering the issue of joinder at a later date")); Next Phase Distribution, 2012 WL 3117182, at *3 ("These cases have led to inconsistent holdings regarding whether defendants who participated in the same swarm on BitTorrent and downloaded the same file satisfy the transaction-or-occurrence standard and can be properly joined. Within this District alone, judges have reached different conclusions.") (collecting cases).

Judge Brown articulated several factors that weigh against allowing such joinder in the instant case: (1) the BitTorrent protocol operates invisibly to the user and the user plays no active role in any interactions with other Defendants; (2) the dates of the alleged infringing action are

often weeks or months apart; (3) individualized questions of fact far outweigh the common questions of fact; and (4) allowing the Plaintiff to pursue mass actions permits the Plaintiff to avoid filing fees. Judge Brown's explanation of these points is detailed and persuasive, and the Court sees no reason to reproduce them at length in this opinion.

The Court notes one additional factor that weighs against the adoption of the "swarm joinder" theory. The Plaintiff extensively quotes from Patrick Collins, Inc. v. John Does 1-21 in its articulation of "swarm joinder" theory. 282 F.R.D. 161 (E.D. Mich. 2012). The Court there held that all possible defendants could be connected through a series of sharing transactions because the defendants all either received a piece of the file in question from the Initial Seeder or from other Peers who received that piece from the Initial Seeder. Id. at 165 ("Therefore, each Defendant is logically related to every other Defendant because they were all part of a series of transactions linked to a unique Initial Seeder and to each other."). If this theory is correct, it relieves the Plaintiff of the burden of demonstrating that a chain of sharing transactions actually connects each of the Defendants.

However, the chain of sharing transactions might easily be broken if a Seeder joins the swarm who obtained a copy of the same file through a different source (such as a different swarm or through other file sharing methods). Therefore, it is possible that any Defendant could have received the file from an intervening sharer, and would have no connection to either the Initial Seeder or the other Defendants. AF Holdings, LLC v. Does 1-97, No. 11-CV-3067, 2011 WL 5195227, at *3 (N.D. Cal. Nov. 1, 2011) ("Given the size of swarms that Plaintiff alleges may occur, it is plausible, or even likely, that the named Doe Defendants never interacted with each other, even through several other intermediaries.") (citing Hard Drive Productions, Inc. v. Does 1–188, 809 F. Supp. 2d 1150, 1163 (N.D. Cal. 2011) ("Any 'pieces' of the work copied or

14

uploaded by any individual Doe may have gone to any other Doe or to any other of the potentially thousands who participated in a given swarm.")).

A number of Courts in this Circuit have specifically adopted some or all of Judge Brown's reasoning on this issue. Digital Sins, 2012 WL 1744838, at *2 ("There is no need for this Court to write another lengthy opinion discussing why plaintiff's theory is wrong. Rather, I adopt and expressly incorporate into this memorandum order the reasoning of . . . the comprehensive Report and Recommendation of The Hon. Gary R. Brown . . .") (citations omitted); Next Phase Distribution, 2012 WL 3117182, at *4 ("First, severance is appropriate here because, once John Does are identified by their ISPs, it is very likely that each John Doe will assert different defenses, thereby adding factual and legal questions that are not common among all the defendants.") (citing In re BitTorrent, 2012 WL 1570765, at *12); Zero Tolerance Entertainment, Inc. v. Does 1-45, 12-CV-1083, 2012 WL 2044593, at *1 (S.D.N.Y. Jun. 6, 2012) ("I therefore *sua sponte* sever the claim against Doe 1 from the claims against Does 2–45 and dismiss the later without prejudice."); Patrick Collins, Inc. v. Doe, No. 12-CV-1153, 2012 U.S. Dist. LEXIS 75986, at *2-*3 (E.D.N.Y. May 31, 2012) ("In considering plaintiff's application, however, the undersigned finds that for the reasons set forth in the well-reasoned decision of Magistrate Judge Gary R. Brown dated May 1, 2012, plaintiff has not satisfied the requirement of establishing that defendants participated in the same "transaction" or "occurrence" within the meaning of Fed. R. Civ. P. 20").

Accordingly, this Court joins the courts referred to above in adopting Judge Brown's findings on this issue. The Plaintiff and their counsel are directed that any future actions of a similar nature in this district be filed as separate actions against each John Doe defendant, so as

15

to avoid unfair outcomes, improper joinder and waste of judicial resources, and to ensure the proper payment of filing fees.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the objections by the Plaintiff to the Report and Recommendation of United States Magistrate Judge Gary R. Brown dated May 1, 2012, are denied; and it is further

**ORDERED** that Judge Brown's Report and Recommendation is adopted in its entirety.

**SO ORDERED.**

Dated: Central Islip, New York
November 20, 2012

_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge