UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PATRICK COLLINS, INC.,

                                        Plaintiffs,

                -against-

JOHN DOE 1,

                                        Defendant.

Civil Action No.
12-CV-1154 (ADS)(GRB)

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12 (b) (6)**

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
Attorneys for Defendant
  Robert C. Angelillo, Esq.
  Michael A. Scotto, Esq.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York 11530
 (516) 741-6566
rangelillo@msek.com
mscotto@msek.com

# TABLE OF CONTENTS

Page

STATEMENT OF FACTS ................................................................... ………………1

ARGUMENT ........................................................................................................ 5

THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED ....................................................................... 5

A. Plaintiff's Complaint Fails to State a Claim Against John Doe 1 .............................................. 7

B. The Complaint Fails to State a Claim Against John Doe 1 as it is Conclusory, and Fails to Establish any Misconduct by Doe Whatsoever .......................................................... 10

C. Plaintiff has not Established an Infringement of Copyright Claim ......................................... 13

CONCLUSION............................................................................................ ………………17

i

# TABLE OF AUTHORITIES

### FEDERAL CASES

Arista Records v. Doe 3, 604 F.3d 110 (2nd Cir. 2010) .................................... ...................13, 15

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ............................................ ....................5, 6, 7

Attia v. Society of New York Hospital, 201 F.3d 50 (2nd Cir. 1999) .................. ...................16

Bell Atlantic Corp. v. Twombly, 550 US  544 (2nd Cir. 1999).......................... ....................5, 6

Chambers v. Time Warner, Inc., 282 F.3d 147 (2nd Cir. 2002) ........................... .....................6

Cooper v. Parksy, 140 F.3d 433 (2nd Cir. 1998) ................................. ...................6

Denton v. Hernandez, 504 U.S. 25 (1992) ............................................ ...................6

Digital Sin Inc. v. Does 1-179, No. 11-CV-8172, 2012 WL 263491 (S.D.N.Y. Feb 1, 2012) ............................................................................... ...................9

Feist Publications Inc. v. Rural Telephone Service Co., 499 U.S. 340 (1991)................13, 16

Folio Impressions Inc., v. Beyer, 937 F.2d 759 (2nd Cir. 1991) ............................ ...................15

Gaito v. Simone Development Corp.,  602 F.3d 57 (2nd Cir.2010) ...................... ...................15

Galiano v. Fidelity National Title Ins., 684 F.3d 309 (2nd Cir. 2012).................... ....................6

Hard Drive Productions, Inc., v. Does 1-55, No. 11 C. 2798, 2011 WL 4889094 (N.D.Ill. Oct. 12, 2011) ........................................................................ ...................15

Harper & Row Publishing, Inc. v. Nation Enterprises, 471 U.S. (1985)............. ...................13

In Re Bit Torrent Adult Film Copyright Cases, No. 12-CV-1154, 2012 WL 1570765 (E.D.N.Y. May 1, 2012)......................................................................... ...............8, 9

In Re NYSE Specialists Sec. Litig., 503 F.3d 89 (2nd Cir. 2007)........................... ...................7

Malibu Media v. John Does 1-10, No. 2:12-cv. 3623, 2012 WL 5382304 (C.D.Cal. June 27, 2012) ...................................................................... ...................8, 14

Mangiafico v. Bluenthal, 471 F.3d 391 (2nd Cir. 2006)...................................... ....................6

Media  Prods., Inc. v. John Does 1-26, No. 12-CV-31719m, 2012 WL 3866492 (S.D.N.Y. Sep. 4, 2012) ................................................................ ...................8

Patrick Collins, Inc. v. John Doe 1, 12-CV-1154, 2012 WL 5879120 (E.D.N.Y. Nov. 20, 2012)
.................................................................................... ..................7, 8, 9

Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117 (2nd Cir. 2007)
.............................................................................. ..................7

Rushton v. Town Bd. for Town of Skaneateles, 601 F.3d 55 (2nd Cir. 2010) ....... ..................5

Ruotolo v. City of New York, 514 F.3d 184 (2nd Cir. 2008)................................ ..................6

Star v. Sony BMG Music Entertainment,  592 F.3d 314 (2nd Cir. 2010) ............. ..................7

Sutton v. United Air Lines, Inc.,  527 U.S. 471 (1999)........................................ ..................6

United States v. Bonanno Organized Crime Family, 879 F.2d 20 (2nd Cir. 1989) ..................7

VPR Internationale v. Does 1-1017, No. 11-11068, WL 8179128 (C.D.Ill. Apr. 29, 2011)
.............................................................................. ..................9

**FEDERAL: STATUTES, RULES**

Rule 8 (a)(2) of the Federal Rules of Civil Procedure  .................................... ..................7

Rule 12 (b)(6) of the Federal Rules of Civil Procedure .................... ..................1, 5, 6, 15, 17

17 U.S.C. § 102(b) ...................................................................... ..................16

17 U.S.C. §106 .............................................................................. ..................1

17 U.S.C. §501 .............................................................................. ..................1

17 U.S.C. §504 .............................................................................. ..................1

17 U.S.C. §505 .............................................................................. ..................1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PATRICK COLLINS, INC.,

Plaintiffs,

-against-

JOHN DOE 1,

Defendant.

Civil Action No.
12-CV-1154 (ADS)(GRB)

### *DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. OF CIV. P. 12 (B) (6)*

Defendant submits this memorandum of law in support of his motion for an order, pursuant to Rule 12 (b)(6) of the Fed. R. Civ. P. ("Fed. R. Civ. P."), dismissing the complaint, along with such other and further relief as the Court deems just and proper under the circumstances.

### STATEMENT OF FACTS

Plaintiff brings this action against Defendant Doe alleging violations of federal copyright law, 17 U.S.C. §§106 and 501 in connection with the alleged copying of portions of a pornographic movie via a file sharing protocol over the internet. Plaintiff seeks money damages pursuant to 17 U.S.C. §504(a)(b) & (c), attorneys' fees and costs pursuant to 17 U.S.C §505, and injunctive relief.

Plaintiff is the owner of the pornographic motion picture "*Gangbanged*" (Complaint¶11), which was registered with the United States Copyright Office on or about June 3, 2011 (Complaint ¶12, Exhibit B). Plaintiff claims that the acts of copyright infringement complained of "occurred using an Internet Protocol address ("IP address") traced to a physical

location located within the District (Complaint ¶4).   An IP address is "a number that is assigned by an internet service provider (and "ISP") to devices, such as computers, that are connected to the Internet" (Complaint ¶8). Plaintiff claims that "[t]he ISP to which ...Defendant subscribes can correlate the Defendant's IP address to the Defendant's true identity" (Complaint ¶9).

Plaintiff's complaint describes the operation of the BitTorrent file sharing protocol (Complaint ¶¶4-27, 29-32, 34-35, Exhibit D); the investigation Plaintiff initiated to detect the alleged copyright infringement (¶¶36-42); and specific allegations which Plaintiff claims establish Defendant infringed Plaintiff's copyright for *Gangbanged* (Complaint ¶¶28, 33, 40, 42, Exhibit A).

Plaintiff claims that "the BitTorrent protocol allows users to join a 'swarm' of host computers to download and upload from each other simultaneously" (Complaint ¶15).  Plaintiff does not claim that the use of the BitTorrent protocol is illegal in and of itself.

Plaintiff claims that Defendant installed a BitTorrent Client, a software program that implements the BitTorrent protocol, onto his computer (Complaint ¶16-17).  Plaintiff claims that a BitTorrent user that wants to upload a new file, known as an "initial seeder," starts by creating a "torrent" descriptor file on their computer (Complaint ¶19). Plaintiff claims that the Client takes the target computer file, the initial "seed," here allegedly Plaintiff's movie *Gangbanged*, and divides it into identically sized groups of bits known as "pieces" (Complaint ¶20).   The Client then gives each one of the computer file's pieces a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file (Complaint ¶21).  When another "peer" (another computer running a BitTorrent client), later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash

identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted (Complaint ¶22).

"Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol (Complaint ¶27). Plaintiff claims that "Upon information and belief…Defendant went to a torrent site to upload and download" *Gangbanged* (Complaint ¶28).

Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites then other peers begin to download and upload the computer file to which the torrent is linked, here *Gangbanged*, using the BitTorrent protocol and the BitTorrent Client that the peers installed on their computers (Complaint ¶29).  The BitTorrent protocol causes the initial seed's computer to send different pieces of the computer file to the peers seeking to download the computer file (Complaint ¶30).  Once a peer receives a piece of the computer file it starts transmitting that piece to the other peers (Complaint ¶31). In this way all the peers are working together in what is called a "swarm" (Complaint ¶32).  Plaintiff's Exhibit D to the Complaint is "a print-out of a computer screen illustrating the type of interactions between and among peers and seeders in a typical swarm" (Complaint ¶33).

Plaintiff explains, "by way of example only," that one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like *Gangbanged*, upload the torrent onto a torrent site and deliver a different piece of *Gangbanged* to each of the peers.  The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm (Complaint ¶34).

Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie.  Also, once a peer has downloaded the full file, that peer

becomes known as "an additional seed" because it continues to distribute the movie (Complaint ¶35).

Plaintiff retained IPP Limited ("IPP") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the internet to reproduce, distribute, display or perform Plaintiff's copyrighted works (Complaint ¶36). IPP used forensic software to scan peer-to-peer networks for the presence of infringing transactions (Complaint ¶37). IPP extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the file identified by SHA-1 hash value of 8F7C963137369F5A874A32E468C1D432DAF0B859 (The "Unique Hash Number") (Complaint ¶38). Plaintiff claims that the "IP address, Unique Hash Number and hit dates contained on Exhibit A show that the defendant copied a piece of *Gangbanged* identified by the Unique Hash Number and was part of the same series of transactions as the other IP addresses listed on Exhibit A (Complaint ¶39).

Plaintiff claims that Defendant's computer (and those of the dismissed eight other John Doe Defendants) used its identified IP address to connect to the investigative server in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number (Complaint ¶40). Plaintiff claims that IPP's agent analyzed each BitTorrent "piece" distributed by each IP address listed in Exhibit A and verified that re-assemblage of these pieces using a BitTorrent client results in a fully playable digital copy of Gangbanged (Complaint ¶41), which when viewed side-by-side with *Gangbanged* was "identical, strikingly similar or substantially similar" (Complaint ¶42).

**ARGUMENT**

**POINT I**

**THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE
TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the Supreme Court clarified the standard that a pleading must meet to survive a motion to dismiss: "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678 (internal citation omitted); <u>see</u>, <u>Ruston v. Town Bd. for Town of Skaneateles</u>, 610 F.3d 55, 58-59 (2d Cir. 2010). For a complaint to survive a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the plaintiff must do more than offer "a formulaic recitation of the elements of a cause of action"; rather, he must advance sufficient factual allegations that, taken as true, are "enough to raise a right to relief above the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 550 (2007).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. <u>Ashcroft v. Iqbal, 556 U.S. at 678</u>.  Where a complaint pleads facts that are "merely consistent with a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." <u>Ashcroft v. Iqbal</u> at 678  (internal citation omitted).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," however, dismissal is appropriate. <u>Ashcroft v. Iqbal</u> at 679. "The plausibility standard...asks for more than a sheer possibility that a defendant has acted

unlawfully" Ashcroft v. Iqbal at 678; accord, Galiano v. Fidelity National Title Ins., 684 F.3d 309, 313 (2ⁿᵈ Cir. 2012).

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal at 679; see, Bell Atl. Corp. v. Twombly, 550 U.S. at 565-66, (2007); Ruotolo v. City of New York, 514 F.3d 184, 188 (2ⁿᵈ Cir. 2008).

Of course, in passing on a motion to dismiss under Rule 12(b)(6), the Court's inquiry is generally limited to testing the allegations of the complaint.  See, e.g., Sutton v. United Air Lines, Inc., 527 U.S. 471, 475 (1999).  However, the court may also consider any document either incorporated by reference or relied upon by plaintiff, Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2ⁿᵈ Cir. 2006), as well as "matters of which judicial notice may be taken" in determining whether plaintiff has a valid cause of action.  Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2ⁿᵈ Cir. 2002) (internal quotes and citation omitted).

Significantly, although the Court must generally assume the truth of plaintiff's factual allegations, the court is not required to accept as true allegations that are "fanciful," "fantastic," or "delusional," Denton v. Hernandez, 504 U.S. 25, 32-33 (1992) (internal quotes and citation omitted).   Additionally, the Court need not accept the truth of legal conclusions couched as factual assertions.  See, Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998) ("bald assertions and conclusions of law are insufficient" to survive a motion to dismiss).   "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal at 678.   The court need not accord

"[l]egal conclusions, deductions or opinions couched as factual allegations ... a presumption of truthfulness," In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2nd Cir. 2007), (quoting United States v. Bonanno Organized Crime Family, 879 F.2d 20, 27 (2nd Cir.1989); see also, Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2nd Cir.2007); Star v. Sony BMG Music Entertainment, 592 F.3d 314, 312 (2nd Cir. 2010).

Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). Ashcroft v. Iqbal at 679.

Based on these established principles, the complaint should be dismissed for failure to state a claim upon relief can be granted.  Here, the claim that alleged misconduct was committed through a particular IP address that Defendant was issued by his ISP does not permit the court to infer more than the "mere possibility of misconduct."

### A. Plaintiff's Complaint Fails to State a Claim as Against John Doe 1.

At the outset, Plaintiff wrongfully argues that the subscriber of Internet service with a particular IP address can be identified as a copyright infringer on that fact alone.

As this Court noted in its November 20, 2012 decision in the instant matter, "[a]n IP address is a numeric label specific to a computer network that serves to identify and locate that network on the internet, but not to further identify the defendant.  In fact, a single IP address may host one or more devices operated and owned by multiple users (for example, a computer or handheld tablet), each communicating on the same network, such as with a wireless router or a business intranet." Patrick Collins Inc., v. John Doe 1, 12-CV-1154, 2012 WL 5879120, at *2

(E.D.N.Y. Nov. 20, 2012) (quoting <u>Media Prods., Inc. v. John Does 1-26</u>, No. 12-CV-31719, 2012 WL 3866492, at *1 (S.D.N.Y. Sep. 4, 2012)).

The Court continued that "[a]n IP address only points to the internet account in question, and as a result, a single IP address usually supports multiple computer devices—which unlike traditional telephones can be operated simultaneously by different individuals." the location at which one of any number of computer devices may be deployed, much like a telephone number can be used for any number of telephones" <u>Patrick Collins v. John Doe 1</u> at *4 (quoting <u>In Re Bit Torrent Adult Film Copyright Infringement Cases</u>, No. 12-CV-1154, 2012 WL 1570765 at * 3 (E.D.N.Y. May 1, 2012)).

"Due to the prevalence of wireless routers, the actual device that performed the allegedly infringing activity could have been owned by a relative or guest of the account owner, or even an interloper without the knowledge of the owner." <u>Patrick Collins v. John Doe 1</u> at *4. "[A] secured network does not reduce the likelihood…that the infringing activity was conducted by a guest, family members, or neighbor who shares the account owner's internet connection." <u>Patrick Collins</u> at *5.

Although the complaint is silent as to whether or not the router was secured, "… a 'secured' wireless network by no means ensures the infringing activity was not performed by an interloper making unauthorized use of the account holder's  network." <u>Patrick Collins</u> at *5. As the Court noted "…anyone with only a moderate degree of computer knowledge" may be able to "hack" a wireless network using fairly inexpensive kits available for sale on the internet. <u>Patrick Collins</u> at *5.

8

As more than one court has noted, plaintiff's counsel in another BitTorrent lawsuit estimated that 30% of the names connected to IP addresses allegedly involved in BitTorrent swarms are not responsible for actually downloading or sharing copyrighted material. In Re Bit Torrent, 2012 WL 1570765 at * 5, citing Digital Sin Inc. v. Does 1-179, No. 11-CV-8172, 2012 WL 263491 at *3 (S.D.N.Y. Feb. 1, 2012).

Indeed, the fact that one who pays for internet service was engaged in any particular act on the internet—here the purported illegal downloading of a portion of a copyrighted video— cannot be established by the mere fact that the individual paid for the service. IP subscribers are not necessarily copyright infringers. See, VPR Internationale v. Does 1-1017, No. 11-1068, WL 8179128 (C.D.Ill., Apr. 29, 2011).

The court in VPR Internationale reached this conclusion by citing an MSNBC article which reported on a raid by federal agents on a home that was linked to downloaded child pornography.

> The identity and location of the subscriber were provided by the ISP. The desktop computer, iPhones, and iPads of the homeowner and his wife were seized in the raid. Federal agents returned the equipment after determining that no one at the home had downloaded the illegal material. Agents eventually traced the downloads to a neighbor who had used multiple IP subscribers' Wi–Fi connections (including a secure connection from the State University of New York). VPR Internationale WL 8179128 *1 (internal citation omitted).

Indeed, this Court noted if it "… were to hold internet account holders responsible for any interlopers and guests who might infringe on the Plaintiff's work, the Court would essentially be imposing a duty that every home internet user vigilantly guard their wireless network." Patrick Collins at *9.

No such duty is required, nor should be in order for an account holder to avoid liability. The mere fact that an individual pays for internet service with an ISP and is issued an IP address is simply not sufficient factual information to support the leap from sheer possibility to plausible. For this reason alone, the Court should find that Plaintiff has failed to state sufficient facts to state a claim and dismiss the complaint.

### B. Plaintiff's Complaint Fails to State a Claim Against John Doe 1 as it Conclusory and Fails to Establish any Misconduct by Doe Whatsoever

Plaintiff claims that a BitTorrent user who wants to upload a new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using the Client they installed onto their computer (Complaint ¶19).   Plaintiff claims that the Client takes the target computer file, the initial "seed," and divides it into identically sized groups of bits known as "pieces" (Complaint ¶20).  Plaintiff however does not allege that Defendant Doe or anyone else was the "initial seeder," or how a digital copy of *Gangbanged* was uploaded in the first instance.

The Complaint further alleged that the Client then gives each one of the computer file's pieces a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file (Complaint ¶21).  The Complaint, however, identifies a single hash identifier as being connected to each of the 9 IP addresses in Exhibit A—not unique hash marks for each piece as the complaint at first alleges.

While the Complaint alleges that "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol (Complaint ¶27) and that "…Defendant went to a torrent site to upload and download" *Gangbanged* (Complaint ¶28), the complaint doesn't allege anything to support this conclusion.

While the Complaint further alleges that, once the initial seeder has created a torrent and uploaded it onto one or more torrent sites then other peers begin to download and upload the computer file to which the torrent is linked (Complaint ¶29), there are no claims that Defendant did this.  Rather, Plaintiff claims that this is how a BitTorrent "swarm" works.

While the Complaint alleges that the BitTorrent protocol causes the initial seed's computer to send different pieces of the computer file to the peers seeking to download the computer file (Complaint ¶30), there is no allegation that Defendant, or anyone else for that matter was the "initial seeder," or distributed a full copy of the picture to anyone else.

While the Complaint provides a description of how a "swarm" works  (Complaint ¶31-32), there is no allegation that defendant participated in the swarm, just an unsupported allegation that Defendant's IP address was used on a certain date and speculation that this was part of a "swarm" of activity over a two-month period.

The Complaint alleges that defendant and other peer members participated in the same swarm through "digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions" (Complaint ¶33). Plaintiff's Exhibit D to the Complaint is "a print-out of a computer screen illustrating the type of interactions between and among peers and seeders in a typical swarm" (Complaint ¶33).  The complaint thus does not provide a basis for the allegation that Defendant and anyone else engaged in a "swarm." Plaintiff's D is not a screen shot of activity relating to Defendant or any of the eight other IP addresses listed in Exhibit A.

The Complaint posits "by way of example only," one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, upload the torrent onto a torrent site and deliver a different piece to each of the peers and

the recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm (Complaint ¶34).  There is no allegation that the Defendant or any of the other IP addresses identified in Exhibit B did this, Plaintiff merely states that this is how BitTorrent operates.

The Complaint alleges that once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces the peer is able to view the movie being downloaded, and that peer becomes known as "an additional seed" because it continues to distribute the movie (Complaint ¶35).  The complaint does not allege that Defendant or anyone else downloaded constituent pieces of *Gangbanged* which they were then able to assemble into a full version and distribute.

Plaintiff claims that Defendant's computer (and those of the dismissed eight other John Doe Defendants) used its identified IP address to connect to the investigative server in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number (Complaint ¶40).  Plaintiff thus identifies the transgressor as a computer attached to the Internet through an IP address which Defendant Doe has been provided by his Internet Service Provider and not Defendant Doe.

Plaintiff claims that IPP's agent analyzed each BitTorrent "piece" distributed by each IP address listed on Exhibit A and verified that re-assemblage of these pieces using a BitTorrent client results in a fully playable digital copy of *Gangbanged* (Complaint ¶41).  IPP allegedly re-assembled the constituent pieces of *Gangbanged*, it is not alleged that Defendant Doe or any of the other 8 identified IP addresses did so.

For all these reasons, the Court should dismiss the complaint as the conclusory allegations in support of Plaintiff's legal conclusions do not rise above speculator level.

Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice in stating a claim upon which relief may be granted. Ashcroft v. Iqbal at 678.  Here, the facts as alleged by Plaintiff do not permit the court to infer more than the mere possibility of misconduct by defendant and the complaint should be dismissed. See, Ashcroft v. Iqbal at 679

### C. Plaintiff has not Established an Infringement of Copyright Claim

The Court should also dismiss the complaint as the facts in it do not support a claim of copyright infringement.

While whether plaintiff's work, a pornographic film, is protected against copyright infringement at all is an open question, (see, In Re Bit Torrent, 2012 WL 1570765, nt. 8), for the purposes of this motion, it appears that the Court must assume that *Gangbanged* is afforded protection under our copyright laws.

"To establish infringement of copyright "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Arista Records v. Doe 3, 604 F.3d 110, 117 (2nd Cir. 2010), quoting Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 340, 361 (1991); see, e.g., Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 548 (1985).

In its Complaint, Plaintiff alleges that "[e]ach Defendant had copied a **piece** of Plaintiff's copyrighted Work identified by the Unique Hash Number." (Complaint ¶ 39(a)) (emphasis added.) "[E]ach of the Defendant's computers used their identified IP addresses ... to transmit a

full copy, or a **portion** thereof, of a digital media file identified by the Unique Hash Number."
(Complaint ¶ 40) (emphasis added.)

Transmitting pieces of a copyrighted work using BitTorrent, without transmitting all of the pieces, doesn't constitute copyright infringement. Individual BitTorrent file pieces are worthless—by themselves they can never be reconstructed into the original file.

One court, in ruling on a motion for early discovery in a BitTorrent lawsuit, described some of the legal ramifications involving the copying of files using BitTorrent technology.

> There are several nuances about the BitTorrent protocol. First, every participant may upload or download pieces of the file. Second, these individual pieces are useless until a user has all of them; the user cannot reassemble the original file with even 99% of the pieces. Third, a user may log on and download just one piece (e.g., a 10kb piece) of the file and then log off, waiting to download the other pieces later or discarding the downloaded piece. Fourth, a user may restrict his BitTorrent software to only download pieces, not upload. Malibu Media v. John Does 1-10, No. 2:12-cv. 3623, 2012 WL 5382304 *1-2 (C.D.Cal., June 27, 2012).

The Court went on to note:

> But Malibu does not show which Doe Defendants transmitted a full copy, and which transmitted just one piece of the file. As noted above, individual BitTorrent file pieces are worthless—by themselves they can never be reconstructed into the original file. Nor do the individual file pieces resemble a partial movie clip: if a 10-minute movie file was split into 60 pieces by BitTorrent, the resulting pieces are not playable 10-second clips of the movie. If it is the case that a Doe Defendant logged onto the BitTorrent swarm, downloaded and then uploaded a single piece to the IPP server, and then logged off, all he has done is transmit an unusable fragment of the copyrighted work. Without the remaining pieces, this Doe Defendant cannot do anything with this scrap of data. Malibu Media v. John Does 1-10, 2012 WL 5382304 *3

This Court should dismiss the complaint as there is no claim that the piece that Doe allegedly downloaded or uploaded to a bit torrent server was substantially similar to the copyrighted work, nor, given the technology at issue, could there be.  As the Second Circuit noted in Gaito v. Simone Development Corp., 602 F.3d 57, 63 (2nd Cir. 2010), "the question of substantial similarity is by no means exclusively reserved for resolution by a jury." "When a court is called upon to consider whether the works are substantially similar, no discovery or fact finding is typically necessary, because "what is required" is only a visual comparison of the work." Gaito v. Simone Development Corp. 602 F.3d at 64; Folio Impressions Inc. v Byer Cal., 937 F.2d 759, 766 (2nd Cir. 1991).

This is not a case like Arista Records v. Doe 3, as in that case, the Plaintiff's investigator was able to determine that a total of 236 entire audio files were available for download via a file sharing folder at the IP address belonging to Doe.  Arista Records v. Doe 3, 604 F.3d at 122. This too is not a case like Hard Drive Productions, Inc. v. Does 1-55, No. 11 C. 2798, 2011 WL 4889094 (N.D.Ill., October 12, 2011), where the District Court declined to dismiss a BitTorrent copyright case for failure to state a claim under FED. R. CIV. P. 12 (b)(6).

In Hard Drive Productions, Plaintiff alleged that Defendant reproduced a Video via BitTorrent to numerous third parties, actively engaged in or directly caused the copying by completing each of the steps in the BitTorrent file-sharing protocol, including intentionally downloading a torrent file particular to the Video, loading that torrent file into the BitTorrent client, entering a BitTorrent swarm particular to the Video, and, ultimately, downloading a whole copy of the file. Hard Drive Productions, Inc. v. Does 1-55, 2011 WL 4889094 at * 4.

15

Here, Plaintiff has merely alleged that an IP address associated with Defendant downloaded or uploaded a digital piece of *Gangbanged*—a piece that was useless without the remaining pieces.   Any piece that Defendant allegedly downloaded or uploaded was not substantially similar to *Gangbanged* without all the constituent pieces being assembled. Defendant Doe's IP address was identified as being involved in the "swarm" on January 18, 2012—yet according to Plaintiff the "swarm" was still using BitTorrent to copy *Gangbanged* on January 26, 2012 (Plaintiff's Exhibit A).

Given Plaintiff's description of the BitTorrent technology and allegations in the complaint, Defendant Doe was never in possession of anything other than a useless piece of *Gangbanged* which could not be replayed and thus he cannot be said to have infringed its copyright.

Indeed, there is no evidence that the particular piece allegedly downloaded by Defendant Doe contained material that could be copyrighted, even assuming *arguendo* that if it could be replayed by Doe. This is fatal to Plaintiff's claim as "[i]n no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." Feist Publications, Inc., 499 US at 356; Attia v. Society of New York Hospital, 201 F.3d 50, 54 (2nd Circ. 1999) (both citing, 17 §U.S.C. 102(b)).

Accordingly, Plaintiff has failed to allege facts sufficient to establish that Defendant infringed the copyright for *Gangbanged* and this Court should dismiss the complaint on that ground as well.

## CONCLUSION

Even assuming *arguendo* the truth of the allegations, plaintiff has failed to state a viable claim against the Defendant.  The complaint is replete with conclusory and speculative allegations, fails to allege sufficient facts "enough to raise a right to relief above the speculative level," and fails to establish a claim for copyright infringement.  Accordingly, the Defendants' motion for an order pursuant to Rule 12(b)(6) of the Fed. R. Civ. P. dismissing the complaint, and for any other fair and equitable relief that may be appropriate, should be granted.

Dated:  December 3, 2012
      Garden City, New York

                      MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
                      Attorneys for Defendant

                      By: /s/
                          Michael A. Scotto, Esq.
                          Robert C. Angelillo, Esq.
                      Attorneys for Defendant John Doe 1
                      990 Stewart Avenue, Suite 300
                      P.O. Box 9194
                      Garden City, New York 11530
                      (516) 741-6566
                      rangelillo@msek.com
                      mscotto@msek.com

127616