UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PATRICK COLLINS, INC.,

                 Plaintiff,

         -against-

JOHN DOE 1,

                 Defendant.
------------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**
12-CV-1154 (ADS)(GRB)

**APPEARANCES:**

**Kotzker Law Group**
*Attorneys for the Plaintiff*
9609 S University Blvd #632134
Highlands Ranch, CO 80163
      By: Jason Aaron Kotzker, Esq., Of Counsel

**Meyer, Suozzi, English & Klein PC**
*Attorneys for the Defendant*
1350 Broadway
Suite 501
New York, NY 10018
    By:  Michael A. Scotto, Esq.
        Robert C. Angelillo, Esq., Of Counsel

**SPATT, District Judge**.

      This action is just one case of many in what can only be referred to as an onslaught of

litigation commenced by pornographic movie producers, alleging direct and indirect copyright

infringement based upon the accused illegal downloading of their works through BitTorrent

technology.  Presently before the Court is the Defendant John Doe's motion to dismiss the

complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule

12(b)(6)").  For the reasons set forth below, the motion is denied.

## I.  BACKGROUND

In order to analyze the legal claims in this copyright infringement case, it is necessary to fully comprehend the technological process through which the accused infringement occurred. Therefore, the Court will reiterate some of its discussion from prior decisions regarding the BitTorrent protocol.

BitTorrent is a peer-to-peer protocol that allows users to transfer large files on the Internet.  First, the protocol breaks a single large file into a series of smaller distributable pieces. Then, an initial fileprovider (the "Initial Seeder") intentionally elects to distribute the pieces to third parties.  An Initial Seeder does so by creating a "torrent" file that contains a road map on where to find the seeder as well as an index of the pieces.  Each piece of the torrent file is assigned a unique cryptographic hash value.  That value acts as a unique digital fingerprint that ensures a piece of data belongs in a particular torrent file.

Other users ("Peers") on the network download this small torrent file.  Once a Peer downloads a torrent file, the file is loaded into BitTorrent software, and the software follows the directions in the torrent file to connect to the Seeder.  When Peers connect to the Seeder, they download random pieces of the file being seeded, each with a unique cryptographic hash value. When a piece of the file has been downloaded, the Peer automatically begins sharing that piece with other Peers.  Once a Peer downloads all of the pieces of the file, BitTorrent reassembles the pieces so that the Peer can view the entire file.  The Seeders and Peers that share the same file, and are downloading and uploading that file to and from each other, are collectively called a "swarm."  If a Peer with the completed file chooses to share that file with an already active swarm, that Peer becomes a Seeder.

BitTorrent also uses a "tracker" that tracks the pieces of the files as those pieces are shared among various computers.  This tracking feature allows an entity such as the Plaintiff to identify the Internet Protocol ("IP") addresses from which the films were downloaded.  An IP address is a "numeric label[] specific to a computer network that serve[s] to identify and locate that network on the Internet, but not to further identify the defendant.  In fact, a single IP address may host one or more devices operated or owned by multiple users (for example, a computer or handheld tablet), each communicating on the same network, such as with a wireless router or a business intranet."  Media Prods., Inc. v. John Does 1-26, No. 12 Civ. 31719, 2012 WL 3866492, at *1 (S.D.N.Y. Sep. 4, 2012).

The Plaintiff claims to be the owner of a copyright registered for the pornographic film "Gangbanged."  The Defendant is an internet user who allegedly downloaded some or all of the Plaintiff's work using the BitTorrent Peer-to-Peer sharing protocol.

On March 8, 2012, the Plaintiff commenced the present lawsuit, alleging direct and indirect copyright infringement against nine anonymous John Doe Defendants.  In its complaint, the Plaintiff identified each of the Defendants only by their IP addresses.

On March 12, 2012, the Plaintiff moved for leave to serve third party subpoenas on the Defendants' alleged Internet Service Providers ("ISPs") to obtain the name, address, phone number, and email address belonging to the accounts associated with the IP addresses contained in the complaint.  On May 1, 2012, United States Magistrate Judge Gary R. Brown issued an Order & Report and Recommendation, in which he granted the Plaintiff's motion in part and allowed the Plaintiff to serve subpoenas pursuant to Fed. R. Civ. P. 45 on the ISPs to obtain the name, address, and Media Access Control addresses.  However, he permitted this only as to the Defendant John Doe 1.  The Plaintiff was explicitly forbidden from seeking the telephone

numbers and email addresses of these individuals.  Furthermore, Judge Brown instructed the

ISPs to produce the information directly to the Court, not to the Plaintiff, and further directed

that the submission be made *ex parte* and under seal.

Judge Brown also made the following recommendations: (1) that the complaint as to all

the Defendants other than John Doe 1 be dismissed without prejudice; and (2) that the Plaintiff

and its counsel be directed that any future action of a similar nature in this district be filed as

separate actions against each John Doe defendant.

On, May 10, 2012, the Plaintiff voluntarily dismissed the Defendants John Does 2

through 9.  On November 20, 2012, this Court adopted the Report and Recommendation in its

entirety.

As part of this Order, the Court explored Judge Brown's conclusion that an IP address

alone is insufficient to establish "a reasonable likelihood [that] it will lead to the identity of

defendants who could be sued."  In re BitTorrent Adult Film Copyright Infringement Cases,

Civil Action Nos. 11–3995(DRH)(GRB), 12–1147(JS)(GRB), 12–1150(LDW)(GRB), 12–

1154(ADS)(GRB), 2012 WL 1570765, at *7 (E.D.N.Y. May 1, 2012).  Judge Brown noted that

an IP address only points to the internet account in question, and "[a]s a result, a single IP

address usually supports multiple computer devices—which unlike traditional telephones can be

operated simultaneously by different individuals."  Id., at *3 (citing U.S. v. Latham, No. 06 Cr.

379, 2007 WL 4563459, at *4 (D. Nev. Dec. 18, 2007)).  This Court noted that due to the

prevalence of wireless routers, the actual device that performed the allegedly infringing activity

could have been owned by a relative or guest of the account owner, or even an interloper without

the knowledge of the owner.

Further, the Court observed that many courts had shared Judge Brown's skepticism of the use of IP addresses to identify file sharing defendants in cases involving pornographic films. Patrick Collins, Inc. v. Does 1-4, 288 F.R.D. 233, 238 (E.D.N.Y. 2012) ("There is a real risk that defendants might be falsely identified and forced to defend themselves against unwarranted allegations.") (citing Digital Sin, Inc. v. Does 1-176, 279 F.R.D. 239, 242 (S.D.N.Y. 2012) ("The Court is concerned about the possibility that many of the names and addresses produced in response to Plaintiff's discovery request will not in fact be those of the individuals who downloaded 'My Little Panties # 2.'  The risk is not purely speculative; Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material."); Digital Sin, Inc. v. John Does 1–179, No. 11-CV-8172, 2012 U.S. Dist. LEXIS 78292, at *1 (S.D.N.Y. Feb. 1, 2012) ("[S]uch discovery creates a cognizable risk that the names produced could include individuals who did not in fact download the copyrighted material.")); Patrick Collins, 2012 WL 2001957, at *1 ("Indeed, the true infringer could just as easily be a third party who had access to the internet connection, such as a son or daughter, houseguest, neighbor, or customer of a business offering internet connection."); Next Phase Distribution, Inc. v. John Does 1-27, 284 F.R.D. 165,  ("Second, the Court recognizes that it is conceivable that several John Does identified in this case did not actually download the Motion Picture.") (citations omitted); Media Prods., Inc. v. John Does 1-26, Nos. 12 Civ. 3719(HB), 12 Civ. 3630(HB), 12 Civ. 2962(HB), 2012 WL 3866492, at *1 (S.D.N.Y. Sept. 4, 2012) ("Particularly troubling for courts is the high probability of misidentified Doe defendants [who may be the bill-payer for the IP address but not the actual infringer] settling a case for fear of the disclosure of the allegations against them or of the high costs of litigation.") (citations omitted).

This discussion underscores the main dispute presented by the instant motion, which is whether the Plaintiff can maintain a plausible copyright infringement claim against a defendant solely on the basis that the defendant owned an IP address that was used to download a protected pornographic film through BitTorrent technology.

## II.  DISCUSSION

### A.  Legal Standard on a Motion to Dismiss

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "'[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).  As such, this Court "accept[s] all factual allegations in the complaint and draw[s] all reasonable inferences in the plaintiff's favor."  ATSI Commc'n, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).  In addition, in its analysis, the Court may refer "to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff's possession or of which [a] plaintiff[ ] had knowledge and relied on in bringing suit."  Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993); see also Karmilowicz v. Hartford Fin. Servs. Group, No. 11–3284–cv, 2012 U.S. App. LEXIS 18394, at *5–6, 2012 WL 3734449 (2d Cir. Aug. 30, 2012).

"To survive a motion to dismiss, a complaint [,] must plead 'enough facts to state a claim to relief that is plausible on its face.'" Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)); see ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 196 (2d Cir. 2009).  According to the Second Circuit, when applying

this "plausibility standard," courts are "guided by '[t]wo working principles.'"  Harris v. Mills,

572 F.3d 66, 72 (2d Cir. 2009) (citing Ashcroft v. Iqbal, 566 U.S. 662, 678, 129 S. Ct. 1937,

1949, 173 L. Ed. 2d 868 (2009)) (alteration in original).  These two working principles are as

follows:

> First, although "a court must accept as true all of the allegations contained in a [counterclaim] complaint," that "tenet" "is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." [Iqbal, 566 U.S. at 678].  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss," and "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." [Id., at 679.]

Mills, 572 F.3d at 72.  Only if this Court is satisfied that the complaint "cannot state any set of

facts that would entitle the plaintiff to relief will it grant dismissal pursuant to Rule 12(b)(6)."

Hertz Corp. v. City of N.Y., 1 F.3d 121, 125 (2d Cir. 1993).

Particularly relevant in consideration of the instant motion, "the plausibility standard is

not akin to a probability requirement, but it asks for more than a sheer possibility that a

defendant has acted unlawfully."  Iqbal, 556 U.S. at 678 (citations and internal quotation marks

omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct," a complaint is insufficient under Fed. R. Civ. P. 8(a) because it has

merely "alleged" but not "'show[n]' . . . that the pleader is entitled to relief."  Id. at 679 (quoting

Fed. R. Civ. P. 8(a)(2)).

B.  Current Legal Landscape

Before the Court embarks on its analysis, it is important to understand that this case is not

being litigated in a vacuum.  Indeed, the issue presented here has been the subject of a lively

debate in many respects, both in the judicial system and across the internet.  See, e.g., Stephen

M. Kramarsky, Evolution of ISP Subscriber Discovery: Courts Seek a Balance, New York Law

Journal, Jan. 22, 2013, available at http://www.newyorklawjournal.com/PubArticleNY.jsp?

id=1202585136327&slreturn=20130418121025; Timothy B. Lee, Judge tells copyright troll to

put up or shut up on porn lawsuits, Ars Technica (Oct. 9, 2012), http://arstechnica.com/tech-

policy/2012/10/judge-tells-copyright-troll-to-put-up-or-shut-up-on-porn-lawsuits/; see also

Digital Sin, Inc. v. Does 1-27, No. 12 Civ. 2873, 2012 WL 2036035, at *2 (S.D.N.Y. June 6,

2012) ("In the last few years, copyright litigation involving the BitTorrent file-sharing protocol

has proliferated in this District and elsewhere.").

Certainly, the legal issue presented—whether the owner of an IP address can be sued if

that IP address has downloaded a copyrighted work through BitTorrent—is the core of the

dispute and the one that is properly before the Court. Nevertheless, the Court cannot ignore the

other constantly emerging theme that runs through this and all similar cases—the potentially

improper litigation tactics that are being utilized by certain pornographic film producers and their

counsel; namely, employing abusive litigation tactics to extract settlements.  In some instances,

copyright owners have demonstrated an enforcement business model that is essentially almost an

extortion scheme, in which plaintiffs seek to "shake down" the owners of specific IP addresses

from which copyrighted adult films were allegedly downloaded.  It has become clear in many

cases that the companies have no intention of pursuing litigation, but rather initiate a lawsuit to

hold a proverbial guillotine over the accused downloaders' heads to extract a settlement because

of the fear of embarrassment over being accused of downloading pornography.  As Judge Brown

stated in his Report and Recommendation, "[o]ur federal court system provides litigants with

some of the finest tools available to assist in resolving disputes; the courts should not, however,

permit those tools to be used as a bludgeon."  In re BitTorrent, 2012 WL 1570765, at *10.

Indeed, one district court judge in the Central District of California characterized this legal landscape as follows:

> Plaintiffs have outmaneuvered the legal system.  They've discovered the nexus of antiquated copyright laws, paralyzing social stigma, and unaffordable defense costs.  And they exploit this anomaly by accusing individuals of illegally downloading a single pornographic video.  Then they offer to settle—for a sum calculated to be just below the cost of a bare-bones defense.  For these individuals, resistance is futile; most reluctantly pay rather than have their names associated with illegally downloading porn.  So now, copyright laws originally designed to compensate starving artists allow, starving attorneys in this electronic-media era to plunder the citizenry.

Ingenuity 13 LLC v. John Doe, No. 12 Civ. 8333, 2013 WL 1898633, at *1 (C.D. Cal. May 6, 2013).

Here, there has been no extreme misconduct that would rise to the level other courts have witnessed.  See id. (referring the attorneys to the United States Attorney's Office for criminal charges); see also Mitch Stoltz, Prenda Law is the Tip of the Iceberg, Electronic Frontier Foundation (May 7, 2013) https://www.eff.org/deeplinks/ 2013/05/prenda-law-tip-iceberg ("We can rightly celebrate that [the] Prenda Law [firm] has been rebuked and its practices exposed. Prenda (under various names) has filed hundreds of suits against thousands of Internet users, and their fall should discourage others from pursuing this business model.  But the problem remains. Copyright is a broken system . . .").  While other courts have observed that many of the copyright owners bringing these types of lawsuits show little incentive to actually litigate because they seek to only extract settlements, here, an opposition to the instant motion was filed, evidencing an intention to litigate.  Nevertheless, it is worth acknowledging the suspicious behavior that is prevalent in cases of this nature.

**C.  As to Whether There is a *Prima Facie* Case of Copyright Infringement**

Putting aside this background for purposes of the present analysis, the Court will now address the pending motion.  The core of the Defendant's motion to dismiss is that "[t]he mere fact that an individual pays for internet service with an ISP and is issued an IP address is simply not sufficient factual information to support the leap from sheer possibility to plausible."  (Def. Mem. at 10.)  In other words, the Defendant argues that IP subscribers are not necessarily copyright infringers, but only possibly may be, and that this is insufficiently plausible to state a claim for copyright infringement.

"To state a claim for copyright infringement, a plaintiff must establish that it owns a valid copyright in the work at issue and that the defendant violated one of the exclusive rights the plaintiff holds in the work."  Capitol Records, LLC v. ReDigi Inc., --- F. Supp. 2d ----, 2013 WL 1286134, at *4 (S.D.N.Y. March 30, 2013).  Specifically, a plaintiff must allege "1) which specific original works are the subject of the copyright claim, 2) that plaintiff owns the copyrights in those works, 3) that the copyrights have been registered in accordance with the statute, and 4) by what acts during what time the defendant infringed the copyright."  Palmer Kane LLC v. Scholastic Corp., No. 12 Civ. 3890, 2013 WL 709276, at *2 (S.D.N.Y. Feb. 27, 2013) (quoting Kelly v. L.L. Cool J., 145 F.R.D. 32, 35 (S.D.N.Y. 1992), aff'd, 23 F.3d 398 (2d Cir. 1994), cert. denied, 513 U.S. 950, 115 S. Ct. 365 (1994)); see Sony Music Entm't Inc. v. Does 1-40, 326 F. Supp. 2d 556, 565 (S.D.N.Y. 2004) (explaining that a *prima facie* claim of copyright infringement consists of two elements (1): ownership of a valid copyright, and (2) copying of constituent elements of the work that are original) (citing Arden v. Columbia Pictures Indus., Inc., 908 F. Supp. 1248, 1257 (S.D.N.Y. 1995)).

Rule 8 of the Federal Rules of Civil Procedure "requires that the alleged infringing acts be stated with some specificity." <u>Palmer Kane LLC</u>, 2013 WL 709276, at *2 (citing <u>Kelly</u>, 145 F.R.D., at 36, n. 3.)  In order to provide the defendant with notice of the claims against it, a plaintiff "may not rest on bare-bones allegations that infringement occurred." <u>Id.</u> (quoting <u>Sharp v. Patterson</u>, No. 03 Civ. 8772, 2004 WL 2480426, at *12 (S.D.N.Y. Nov. 3, 2004)).

The complaint here properly alleges that the copyright has been registered, in that it states that the "Plaintiff is the owner of United States Copyright Registration Number PA0001745322 (the 'Registration') for the motion picture entitled 'Gangbanged' (the 'Work').  The Work was registered on or about June 3, 2011." (Compl. at ¶ 11–12.)  In this regard, the complaint sufficiently alleges which specific works are the subject of the copyright claim.  In addition, the Plaintiff has included as an attachment to the complaint certain documentation from the United States Copyright Office which demonstrates the Plaintiff's ownership of the Registration.  Indeed, the Defendant does not attempt to dispute that the Plaintiff does not own the copyright to the work at issue and therefore there is no dispute as to whether the Plaintiff has adequately stated this element of its copyright infringement claim.

The issue presented here is whether the Plaintiff has adequately alleged by what acts during what time the Defendant infringed the copyright.  In the complaint, the Plaintiff details the relevant BitTorrent technology in detail.  The complaint then goes on to state that: (1) "Each Defendant installed a BitTorrent Client onto his or her computer." (Compl. at ¶ 16); (2) "Upon information and belief, each Defendant went to a torrent site to upload and download [the] Plaintiff's copyrighted Work." (Compl. at ¶ 28); (3) "Here, each Defendant peer member participated in the same swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading

11

and downloading . . ." (Compl. at ¶ 33); (4) "Each Defendant has copied a piece of [the]

Plaintiff's copyrighted Work identified by the Unique Hash Number" (Compl. at ¶ 39); (5) "each

of the Defendant's computers used their identified IP addresses to connect to the investigative

server from a computer in this District in order to transmit a full copy, or a portion thereof, of a

digital media file identified by the Unique Hash Number" (Compl. at ¶ 40); and (6) an "agent

viewed the Work side-by-side with the digital media file that correlates to the Unique Hash

Number and determined that they were identical, strikingly similar or substantially similar."

(Compl. at ¶ 42.)

     In the Court's view, the Plaintiff has adequately pled a plausible claim of copyright

infringement by providing sufficient detail as to the acts the John Doe Defendant took in

infringing the copyright, including going to a torrent site; participating in a swarm; and copying a

piece of the copyrighted work identified by a unique hash number.  See John Wiley & Sons, Inc.

v. Doe Nos. 1-30, 284 F.R.D. 185, 189 (S.D.N.Y. 2012) (finding that the plaintiff had made a

"concrete showing of a "*prima facie* claim of copyright infringement by alleging (1) its

ownership of the registered copyright for Windows 7 Secrets, and (2) specific details regarding

unlawful copying and distribution of this work, including the date and time at which the copying

occurred, the file-sharing technology used, and the IP address of the computer from which the

file was copied."); see also Malibu Media, LLC v. Does 1, No. 12 Civ. 2078, 2013 WL 1702549,

at *4 (E.D. Pa. January 3, 2013) ("In the Amended Complaints, Malibu accuses five separate

John Doe Defendants of direct copyright infringement.  It avers that it owns copyrights to erotic

videos; that each Defendant downloaded its copyrighted videos without authorization; and that

the manner in which Defendants operated was through using BitTorrent, a technology that

enables "swarms" of computer-users to download pieces of digital media and share them with

each other.  It attaches exhibits to each Amended Complaint showing the dates and times

Defendants allegedly downloaded its copyrighted works, as well as the hash tags associated with

each unauthorized download.  These averments state a plausible claim of direct infringement

under the Copyright Act.").

It is true that the Defendant is identified only by his IP address, as it was the IP address

he subscribed to that was connected to the investigative server to transmit a full copy or portion

of the protected media file at issue.  Further, as both Magistrate Judge Gary R. Brown and this

Court have observed, there are doubts that the subscribers of IP addresses are actually the

individuals who carried out the complained of acts.  However, the difficulty that the Plaintiff will

ultimately have in proving that the individual John Doe Defendant was the one who actually

utilized the IP address to commit the accused copyright infringement is not relevant in the

context of a motion to dismiss.  Instead, at this time, the Plaintiff merely has to state a plausible

claim.  Thus, while it is a reasonable possibility that the Defendant here did not commit any

copyright infringement because another individual did so using his IP address, such as a different

family member, visitor, neighbor, or passerby, it is an equally reasonable possibility that the

Defendant committed the accused of act.

Indeed, every court to have addressed this issue has found a sufficiently alleged copyright

infringement claim based on BitTorrent technology, even when the defendant was merely

identified with an IP address.  See, e.g., Malibu Media, LLC v. Does 1, No. 12 Civ. 2078, 2013

WL 1702549, at *4 (E.D. Pa. January 3, 2013); John Wiley & Sons, Inc. v. Doe Nos. 1-30, 284

F.R.D. 185, 189 (S.D.N.Y. 2012); Malibu Media, LLC v. Pelizzo, No. 12 Civ. 22768, 2012 WL

6680387, at *3 (S.D. Fla. 2012) (finding a similar complaint sufficient where a plaintiff "simply

alleged that a computer using the IP address assigned to Defendant participated in the alleged

infringing activity" despite the fact that the "Defendant argue[d] that the allegations [were] too speculative and conclusory to adequately allege a plausible copyright infringement claim against an individual person, specifically Defendant . . . because they d[id] not explain how his condominium unit was associated with the IP address at issue"); <u>Braun v. Primary Distributor Doe No. 1</u>, Nos. C 12–5786 MEJ, 12–5814 MEJ, 12–5812 MEJ, 12–5813 MEJ, 2012 WL 6087179, at *3 (N.D. Cal. Dec. 6, 2012) (concluding that the plaintiff had adequately asserted a federal copyright infringement claim because the plaintiff alleged that "Defendants actively engaged in or directly caused the copying by completing each of the steps in the BitTorrent file-sharing protocol, including intentionally downloading a torrent file particular to Star Wars XXX. A Porn Parody, loading that torrent file into the BitTorrent client, entering a BitTorrent swarm particular to Star Wars XXX. A Porn Parody, and ultimately, downloading and uploading pieces of a Star Wars XXX. A Porn Parody file to eventually obtain a whole copy of the file."); <u>Sunlust Pictures, LLC v. Does 1-75</u>, No. 12 Civ. 1546,, 2012 WL 3717768, at *4 (N.D. Ill. 2012) ("It is plausible, based on these allegations, that Doe shared copyrighted data with others in the swarm including some or all of the other defendants.").

Moreover, the concerns expressed by both Judge Brown and this Court as to the likelihood that IP addresses could be used to identify the defendants were made in the context of a discovery request. This is a discrete concept and a varying legal standard from the one governing the Court for purposes of this motion to dismiss. Judge Brown was given the task of determining whether to grant a Rule 45 subpoena directed at non-party ISPs to obtain identifying information about subscribers to the named IP addresses. Thus, the relevant inquiry was whether the Plaintiff's discovery request was "sufficiently specific to establish a reasonable likelihood that the discovery request would lead to identifying information that would make possible

service upon particular defendants who could be sued in federal court." Sony Music, 326 F. Supp. 2d at 566.  Here, the Plaintiff does not need a reasonable likelihood but rather a plausible showing.  See U.S. v. Copeland, 376 F.3d 61, 73 (2d Cir. 2004) (noting that there is a distinction between the two standards).  Judge Brown denied the Plaintiff's discovery request as to every defendant except for John Doe 1, not because the Plaintiff could not state a plausible claim, but rather because it did not establish a reasonable likelihood that discovery would lead to the identity of defendants who could be sued.

Finally, the Defendant points out that the Complaint alleges that "[e]ach Defendant had copied a piece of Plaintiff's copyrighted Work identified by the Unique Hash Number" and "transmit[ted] a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number."  (Compl. at ¶ 39(a), 40.)  According to the Defendant, transmitting only pieces of a copyrighted work, as opposed to transmitting all of the pieces, cannot constitute copyright infringement.  In support of this position, Doe contends that individual BitTorrent file pieces are worthless in that they can never be reconstructed by themselves into the original file.

As an initial matter, the Complaint alleges that the Defendant *either* transmitted a full copy or a portion thereof.  Thus, it is alleged that the Defendant may have transmitted the entirety of the protected work.

More importantly, the Defendant's assertions are incorrect.  A defendant may infringe on the plaintiff's work "through literal copying of [only] a portion of it."  Belair v. MGA Entm't, Inc., 831 F. Supp. 2d 687, 693 (S.D.N.Y. 2011); see also MiTek Holdings, Inc. v. Arce Eng'g Co., Inc., 89 F.3d 1548, 1554 (11th Cir. 1996) ("in order for a plaintiff to prevail on a claim of copyright infringement, the court must find . . . that the *portion* of the work copied is original and thus protectable") (emphasis added).  As the Second Circuit has recognized, "a copyright

15

infringement may occur by reason of a substantial similarity that involves only a small portion of each work." Burroughs v. Metro-Goldwyn-Mayer, Inc., 683 F.2d 610, 624 n.14 (2d Cir. 1982). If the piece that the Plaintiff proves the Defendant downloaded is so insignificant that there is not a substantial similarity between the copyrighted work and the infringement, it is possible that the Plaintiff may not be entitled to recover. See Sandoval v. New Line Cinema Corp., 147 F.3d 215, 217 (2d Cir. 1998) ("To establish that the infringement of a copyright is *de minimis*, and therefore not actionable, the alleged infringer must demonstrate that the copying of the protected material is so trivial 'as to fall below the quantitative threshold of substantial similarity, which is always a required element of actionable copying.'") (quoting Ringgold v. Black Entertainment Television, 126 F.3d 70, 74 (2d Cir. 1997). However, at this early stage of the proceeding, that is not a cause for dismissal of the action.

Therefore, the Court finds all of the Defendant's arguments to be without merit. The Defendant's motion to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6), is denied.

### III.  CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that the Defendant's motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the complaint is denied.

**SO ORDERED.**
Dated: Central Islip, New York
May 18, 2013

\_\_ */s/ Arthur D. Spat*_____
ARTHUR D. SPATT
United States District Judge

16